[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 3, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14228

_____

D. C. Docket No. 06-00360-CV-WS-C

RICHARD PREIS,
VICTORIA HEARIN PREIS,

Plaintiffs-Appellants,

versus

LEXINGTON INSURANCE COMPANY,
T&B, LTD,
d.b.a. Thames, Batre', Mattei,
Beville, and Ison, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(June 3, 2008)**

Before DUBINA and BARKETT, Circuit Judges, and SCHLESINGER,[*] District Judge.

PER CURIAM:

Richard and Victoria Preis[1] appeal from an adverse partial summary judgment in favor of Lexington Insurance Company, providers of Pries' homeowner's insurance policy; an adverse summary judgment in favor of Thames, Batre, Mattei, Beville, and Ison ("T&B"), the insurance agency that issued the Lexington policy and Allen Ladd, its agent. Pries also appeals from a jury verdict of $70,000, which the jury awarded to Pries at the conclusion of a three-day trial, based on purported evidentiary errors and errors in the jury instructions. Pries seeks reversal of the district court's summary judgment rulings, and a new trial.

## I. Background

Pries' home on Mobile Bay, in Point Clear, Alabama, was severely damaged by Hurricane Katrina. According to Pries, the house had a replacement value in excess of $1,200,000 and the loss on personal property in the house was in excess of $750,000.

Pries had two sets of insurance policies covering the house and its contents. First, he had a homeowner's policy ("the Lexington policy"), originally purchased

[*] Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

[1] For ease of discussion, we will hereinafter refer to the Appellants in the singular, "Pries."

in 1995. The Lexington policy was an all-risk policy that insured against any direct loss of personal or structural property of the home at issue, with certain exclusions. One of the exclusions of coverage was for loss caused "directly or indirectly" by "water damage", defined as "flood, surface water, wave, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind . . . ." The Lexington policy is the only insurance policy at issue in this appeal.

The second relevant set of insurance policies covering the property at issue at the time of Hurricane Katrina was for flood damage. Preis had a primary flood policy with Hartford Insurance Company, and an excess flood insurance policy with WNC Insurance Services. Following Hurricane Katrina, Pries submitted a claim to both Hartford Insurance and to WNC Insurance Services. Pries received a total of $587,659.71 from these flood insurance providers for the damage incurred as a result of floods caused by the hurricane. This amount constituted the full policy limits of both policies.

Pries also notified Lexington of the loss in order to recover for wind damage under the homeowners' policy and submitted the same claim of loss to Lexington that had been submitted to the flood insurance carriers. Within one week of Preis' notification of the loss, Lexington retained an independent adjuster, Reid Jones

3

McRorie & Williams, to investigate Pries' claim. Reid Jones issued a final report several months later, indicating that the majority of the damage to the house was a result of "storm surge", and that the "[moderate] wind damage was primarily limited to the roof." Reid Jones estimated that Pries was due a payment in the amount of $72,155.96 for the damage that had not been caused by flood waters. Based on this assessment, Lexington made Pries an unconditional tender for $53,135.97, which reflected Reid Jones' estimate less the policy's wind deductible of $19,020.00.

Preis rejected Lexington's tender of $53,135.97 and notified Lexington of his intent to file this lawsuit against Lexington. Lexington then retained the engineering services of Project Time & Cost ("PT&C") to determine the cause and origin of Preis' losses. PT&C's report confirmed that the majority of the house was damaged as a result of storm surge, but that some damage was attributable to wind damage. Based on PT&C's report, Reid Jones readjusted Pries' estimated loss, and increased their unconditional tender by $11,031.90 to $64,167.86. Pries again rejected the loss amount, and proceeded to file the instant suit.

A three-day jury trial was held in August 2007. At the close of the evidence, and prior to the case being submitted to the jury, the district court granted Lexington's Rule 50 motion for judgment as a matter of law on Preis' claim for

4

damage to the contents of the house, finding that Pries had failed to present facts sufficient to allow the trier of fact to segregate the amount of damages to the home's contents attributable to wind from those damages due to water from the storm surge. After deliberating, the jury awarded Pries $70,000 for damages to the structure attributable to wind.

## II. Discussion

Preis challenges several aspects of the trial, as well as two of the district court's rulings on summary judgment. We address each issue in turn.

1.    Evidentiary Rulings[2]

Preis argues that the district court erred in admitting evidence of "the amount of the flood settlement in the amount of $587,659.71," and contends that evidence of the flood payments is barred under Federal Rule of Evidence 408.[3] We have held that "[f]or Rule 408 to apply, there must be an actual dispute, or at least an apparent difference of opinion between the parties, as to the validity of a claim." Dallis v. Aetna Life Ins. Co., 768 F.2d 1303, 1307 (11th Cir. 1985). We have

---

[2] We review the district court's evidentiary rulings under a deferential abuse of discretion standard. United States v. Frazier, 387 F.3d 1244, 1258 (11 Cir. 2004) (en banc).

[3] Rule 408 provides in pertinent part: "Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount." Fed. R. Evid. 408.

specifically rejected the notion that "the payment of a claim by an insurance company, where there is no evidence that the insurance company ever disputed the claim, qualifies as a compromise within the meaning of Rule 408." Id. 1306–07. Since Pries submitted his claim to the flood insurers and received the full policy limits from both of them absent any dispute as to the validity of his claim, the district court did not abuse its discretion in finding that Rule 408 did not bar admissibility of the payments.

Pries also argues that the lay testimony of insurance adjusters James Gibson and Tracy Clark should not have been admitted into evidence under Federal Rule of Evidence 701 because they did not have personal knowledge of the facts and because their testimony was based on "scientific, technical, or other specialized knowledge within the scope of Rule 702," which governs expert testimony. The testimony offered by both Clark and Gibson specifically related to the damage to the home they observed during the inspections they personally conducted, the reports they each individually prepared regarding their assessments of the damage to the Pries' home, and the procedures they employed to reach their loss estimates. Given the nature of their testimony, the district court did not abuse its discretion in allowing the adjusters to testify as lay witnesses.[4]

_____

[4] Moreover, our review of the trial transcript indicates that any opinion testimony offered by Clark or Gibson was in fact solicited by Pries. See Doc. 236, p. 403, ll. 9–11 (Clark asked on

6

2.    Burden of Proof: Directed Verdict and Jury Instructions

Preis contends that the district court's application of an erroneous burden of proof resulted in two errors: 1) the court erroneously granted Lexington a directed verdict on the question of Lexington's liability for the damage to the contents of the home; and 2) the jury instruction regarding the burden of proof was an erroneous statement of the law.  We review the allocation of the burden of proof de novo.  Guajardo v. Texas Dept. of Crim. Justice, 363 F.3d 392, 395 (5th Cir. 2004); see also United States v. DeVegter, 439 F.3d 1299, 1303 (11th Cir. 2003) ("We generally review de novo questions of law.").

The Louisiana Supreme Court has stated that, "[i]n an action under an insurance contract, the insured bears the burden of proving the existence of the policy, and the coverage."  Turnstall v. Stierwald, 809 So.2d 916, 921 (La. 2002). The insured also bears the threshold burden of proving an accidental direct physical loss to the insured property, and the amount of the loss.  See Pelas v. Amer. Emp. Ins. Co., 299 So.2d 815, 817 (La. App. 1974) ("As in any action on an insurance policy, the burden is upon the plaintiff to prove the loss insured

cross, "Hypothetically, Mr. Clark, if windows blew out in this house, would you consider the contents that would have been damaged?"); Doc. 235, p. 231, ll. 22–24 (Gibson asked on cross, "What would have been your loss if you had to assume that the whole thing had to be torn down?"  Gibson responded, "You know, I wouldn't even wing that.").  The admission of inadmissible testimony, "when responding to an inquiry by [appellant's] counsel, creates 'invited error'."  United States v. Parikh, 858 F.2d 688, 695 (11th Cir. 1988).  "[I]nvited error constitutes neither plain nor reversible error." Id.

7

against.") (Schott, J., dissenting); Brouillette v. Phoenix Assur. Co., 340 So.2d 667, 672 (La. App. 1977) ("Plaintiff had the burden of proof on the amount of the loss."). Once an insured has met this initial burden, the burden then shifts to the insurer to prove by a preponderance of the evidence that the loss falls within a policy exclusion. Turnstall, 809 So.2d at 921 ("The insurer, however, bears the burden of showing policy limits or exclusions."). The segregation or allocation of the causes of the loss is left to the finder of fact once the parties have met their initial burdens. See Broussard v. State Farm Fire & Casualty Co., No. 07-60443, 2008 WL 921699, at *5–6 (5th Cir. Apr. 7, 2008). It is with this appropriate burden of proof in mind that we now turn to Preis' arguments.

A.    Directed Verdict

We review a district court's ruling on a judgment as a matter of law under Rule 50 de novo, examining the evidence in the light most favorable to the non-moving party. Optimum Tech. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1251 (11th Cir. 2007). "Judgment as a matter of law is appropriate when a plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." Proctor v. Flor Enterprises, Inc., 494 F.3d 1337, 1347 n.5 (11th Cir. 2007).

Preis argues that the district court erroneously granted Lexington's Rule 50

motion with regards to the contents because "the Plaintiffs have not identified any evidence that affords the jury a reasonable basis for separating losses due to wind from losses due to flood." Preis contends that this placed an inappropriately high and erroneous burden of proof upon him, arguing that all he needed to do was establish the coverage, the loss and the loss amount, and not the cause of the injury. We agree with Preis regarding his burden, but agree with the district court that this initial burden was not met by Preis in this case. Had Preis simply established that he had the requisite accidental damage coverage and that he had been damaged in a specific amount, he would have met his burden of proof under his all-risk policy. Lexington would then have the burden to prove that the damages claimed were the result of water, which was a cause explicitly excluded by the coverage.

Here, however, Preis failed to initially establish a basis from which the jury could have awarded an amount for the personal property in the house that was covered by the Lexington policy. Each of Preis' witnesses in his case-in-chief conceded that there was water damage and debris on the inside of the home from the flooding, and the parties do not dispute that water damage is not covered under the Lexington policy. None of Preis' witnesses testified regarding any damage to the contents of the home not caused by water, and Preis conceded that he submitted identical claims for the contents to both his flood insurers and to Lexington. In

9

short, Preis did not present any evidence in his case-in-chief which would support a jury finding that the contents were destroyed by anything but water. Given the absolute lack of evidence that the contents of the house were damaged by a covered peril, no reasonable jury could find that Preis had met his burden of proving the amount of covered loss by a preponderance of the evidence. Under these circumstances, we cannot find that the district court erred by granting Lexington's motion for judgment as a matter of law regarding the contents of the Preis' home.

B.     Jury Instructions Regarding Burden of Proof

We review the challenged jury instructions under a deferential standard of review. United States v. Puche, 350 F.3d 1137, 1148 (11th Cir. 2003). We do, however, review them de novo to "determine whether they misstate the law or mislead the jury to the prejudice of the objecting party." Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002).

Having reviewed the jury instructions delivered by the district court in their entirety, we cannot agree with Preis that the district court misstated the law. The district court accurately recited the burden of proof under Louisiana law. The court instructed the jurors that the initial burden is on the plaintiffs to prove "the existence of the policy sued on, its terms and provisions, that their claim is within

10

its coverage, and the amount of their covered damage." The district court also instructed the jury that "it is the insurer who bears the burden of proving the applicability of any exclusion from coverage of the policy." Thus, the district court's jury instructions regarding the applicable burden of proof was an accurate statement of law.

3.      Jury Instruction Based on Debris

Preis next argues that the district court erred by instructing the jury that "wind driven wood debris was water damage and not covered." The actual instruction the court delivered follows:

> The exclusion for water damage excludes loss resulting either directly or indirectly from flood, and loss from debris that strikes covered property when carried there by flood waters is loss caused indirectly by flood and is thus excluded.

We again review the challenged jury instruction under a deferential standard of review. Puche, 350 F.3d at 1148.

The instruction given by the court limits the exclusion from coverage to debris damage caused by flood waters, and does not implicate "wind driven wood debris" as suggested by Preis. Though the word "debris" does not appear in the language of the water damage exclusion, the language of the policy unambiguously excludes damage caused directly or indirectly from flood. Thus, the district court did not err in instructing the jury that damage from debris which strikes the

11

covered property as a result of floods is excluded under the clear language of the water damage exclusion.

4.      Summary Judgment Rulings[5]

Finally, we have carefully reviewed this record and find no error in the district court's grant of summary judgment against Preis on his claim that Lexington acted in bad faith or on his claims against T&B and Ladd.

**AFFIRMED.**

---

[5] We review a district court's rulings on summary judgment de novo. Mega Life and Health Ins. Co. v. Pieniozek, 516 F.3d 985, 989 (11th Cir. 2008). "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law." Id.; Fed. R. Civ. P. 56(c).