COCONUT KEY HOMEOWNERS ASSOCIATION, INC., Plaintiff,

v.

LEXINGTON INSURANCE CO., Defendant.

No. 08–60640–PAS.

United States District Court, S.D. Florida.

Aug. 28, 2009.

Daniel S. Rosenbaum, John Marcus Siracusa, Richard Chambers Valuntas, Katzman, Garfinkel, Rosenbaum, LLP, West

Palm Beach, FL, Keith Jeffrey Lambdin, Brian E. Wiklendt, Katzman Garfinkel Rosenbaum, John David Mallah, Maitland, FL, for Plaintiff.

Melissa M. Sims, William S. Berk, Seric James Fallon, Berk, Merchant & Sims, PLC, Coral Gables, FL, for Defendant.

*ORDER DENYING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT. GRANTING DEFENDANT'S MOTION TO AMEND AND RULING ON OUTSTANDING EVIDENTIARY MOTIONS*

PATRICIA A. SEITZ, District Judge.

THIS MATTER is before the Court on the following motions: (1) Defendant's Motion for Partial Summary Judgment [DE–59]; (2) Defendant's Motion to Strike Plaintiff's Expert Marc Girard [DE–60]; (3) Plaintiff's Motion to Strike Defendant's Proposal For Settlement [DE–72]; (4) Defendant's Motion to Amend its Answer and Affirmative Defenses to Conform to Newly Discovery Evidence [DE–73]; (5) Plaintiff's Motions in Limine to Preclude Evidence at Trial [DE–74]; (6) Plaintiff's Motion in Limine to Exclude Lexington Insurance Company's Second Affirmative Defense [DE–76]; and, (7) Plaintiff's Motion in Limine to Exclude Lexington Insurance Company's Seventh and Eighth Affirmative Defense [DE–77]. The Court will address each Motion separately. With the exception of Defendant's Motion for Partial Summary Judgment, the basis for the disposition of each motion has already been described in detail at the Pretrial Conferences held August 14, 21 and 24, 2009.

### 1. Defendant's Motion for Partial Summary Judgment

This is an insurance coverage dispute between Plaintiff Coconut Key Homeowners Association, Inc. ("Coconut Key"), the management entity of a condominium development in Margate, Florida, and Defendant Lexington Insurance Company ("Lexington"). Coconut Key alleges that Lexington has breached an insurance policy with Coconut Key by not paying for covered losses Coconut Key claims it sustained from Hurricane Wilma, which passed through South Florida on or around October 24, 2005.

Lexington has filed a Motion for Partial Summary Judgment [DE–59] in which it claims an inspection provision in the policy precludes Coconut Key from recovering damages to units that Lexington has been unable to inspect. It argues the provision, requiring Coconut Key to "permit [Lexington] to inspect" damaged property is a "clear and unambiguous condition precedent to recover under the ... policy." According to Lexington, Defendant must gain access to "the entirety of damaged property" in order for Coconut Key to present a claim regarding that property. Lexington claims, as a result, that it should be entitled to partial summary judgment relieving Lexington of any obligation to indemnify Plaintiff for damage to the units that Lexington has not been able to inspect.

Plaintiff's response asserts that the inspection provision is a "cooperation clause" instead of a "condition precedent" and argues that Lexington's motion should be denied because the record evidence shows Coconut Key has cooperated with Lexington's request for inspections. Plaintiff notes that Lexington's adjusters have had three-and-a-half years since Hurricane Wilma to inspect all of the units. Finally, it claims that a complete inspection is virtually impossible given mortgage foreclosures in the development. As was noted in the Court's August 13, 2009 Order [DE–103], Defendant's Motion for Partial Summary Judgment is DENIED as Lexington

has not established as a matter of law that Coconut Key materially breached the inspection provision in the policy or that it has been substantially prejudiced from being unable to access the units at issue.

### a. Factual Background

This dispute pertains to a homeowners insurance policy Coconut Key secured with Lexington that included coverage for damage caused by wind and rain between June 1, 2005 and June 1,2006. [Def's Statement of Undisputed Facts at ¶ 1; Lexington's Policy With Coconut Key, Exhibit A to Def's Mot. for Part. Sum. Judg.]. The policy contains the following provision:

### 3. Duties In The Event of Loss Or Damage

You must see that the following are done in the event of loss or damage to Covered Property:

. . . . . . . . . . . . . . . . . . . . . . .

f. Permit us to inspect the property and records proving the loss or damage. Also, permit us to take samples of damaged property for inspection, testing or analysis.

[Def's Statement of Undisputed Facts at ¶ 3].

According to Coconut Key,[1] David Crump, the original field adjuster that examined the Coconut Key site, estimated damages of just over $100,000 in November 2005. Plaintiff claims has Crump testified that Lexington never asked him to inspect interior damages before his November 2005 adjustment, that he never inspected windows or doors and that he never went up on any of the roofs.

Since challenging Defendant's initial adjustment Plaintiff has offered on at least four occasions to make its premises available to Defendant for inspection of the insides of units that have purportedly incurred damages. First, on December 11, 2007, Plaintiff asked Defendant to provide dates for re-inspection of the property, stating it could "accommodate any dates that you have available. . . ." [E-mail From Leslie Nitch to Jack Dearman, Ex. A. to Plf's Resp.]. The record does not indicate what response Defendant made to this invitation. Second, Defendant's inspectors went out to Coconut Key between July 14, 2008 and July 19, 2008 to perform unit inspections and inspected approximately 50% of the units at issue. [Def's Statement of Undisputed Facts at ¶ 4].[2]

Coconut Key made additional efforts to reach out to unit owners to facilitate another round of inspections that occurred between January 19, 2009 and January 22, 2009. [Id. at ¶ 5]. Coconut Key composed an inspection schedule for its members identifying the units to be inspected and the times when adjusters were scheduled to perform their inspection for each unit. [Inspection Schedule, Ex. E. to Def's Mot. for Part. Sum. Judg.]. On January 7, 2009, it also composed a letter to its members "formally requesting that each owner make his or her home available for inspection" on the scheduled dates. [Coconut Key Letter to Members, Ex. H to Def's Mot. for Part. Sum. Judg.]. However, despite these efforts, Lexington was still unable to access approximately 51 units fol-

---

**1.** This paragraph is included to give context for the reader but does not present undisputed facts that this Court can consider in deciding Defendant's Motion for Partial Summary. As Plaintiff failed in its response to cite to or attach any record evidence regarding Mr. Crump's findings, this Court will not consider Plaintiff's assertions concerning Mr. Crump's adjustments.

**2.** Though record evidence provided to the Court indicates that approximately 51 of the approximately 200 units (about 25%) "were not made available to Defendant for inspection" in July of 2008 or January of 2009 [Fallon Affidavit at ¶ 6, Ex. D to Def's Mot. for Part. Sum. Judg.], it does not support Defendant's claim that it could only access approximately 50% of the units in July 2008.

lowing this second round of inspections. [February 20, 2009 Letter from Sims to Lambdin, Ex. F to Def's Mot. for Part. Sum. Judg.; Fallon Affidavit at 16].

Finally, Plaintiff made efforts to facilitate an additional round of inspections following the May 21, 2009 deposition of Ejola Cook, the Vice President of Coconut Key's Board of Directors. Plaintiff's counsel offered Defendant's counsel the opportunity to inspect the property again and Ms. Cook personally contacted or attempted to contact each unit owner to advise them that they needed to make their units available for inspection. [Cook Affidavit at ¶¶ 5–6] [DE–95–1]; May 21, 2009 [Cook Dep. 58:25–59:24, Ex. C. to Plf's Resp.]. Ms. Cook has found that at least ten of the units are in foreclosure or are empty for some other reason. [June 23, 2009 Cook Dep. 132:1–134:21, Ex. B. to Plf's Resp].

Nothing in the record indicates that Coconut Key can force access to the remaining units for inspection. Even if Coconut Key could easily provide Lexington with access to the units, neither party has come forward with evidence to demonstrate that the units at issue represent a substantial portion of Coconut Key's damages. Furthermore, Lexington asserts that after having inspected the interiors of just over 75% of the units, it has "not uncover[ed] any unpaid damages to which Plaintiff would have been entitled." [Revised Joint Pretrial Stipulation at 4] [DE–112].

#### b. Legal Standard

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial respon-

sibility of showing the Court, by reference to the record, that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may be met by "showing" or "pointing out" to the Court that there are no genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir.1995) (*per curiam*) (quoting *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548). Once the initial burden is met, the non-moving party must go beyond the pleadings and "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)); *see also Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. In so doing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348. Instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the non-moving party. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir.1998) (citations omitted). The Court must then decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997) (quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505).

#### c. Analysis

To properly define Lexington's burden on this motion, this Court must

determine whether the inspection provision is a "condition precedent" or a "cooperation clause." "A condition precedent is one that is to be performed before the contract becomes effective" such that recovery is disallowed if the insured materially breaches the condition precedent at issue. *Goldman v. State Farm Fire Gen. Ins. Co.*, 660 So.2d 300, 303 (Fla. 4th DCA 1995). Two commonly recognized conditions precedent in insurance policies are requirements that an insured (1) submit to an examination under oath and (2) submit a sworn proof of loss. *See Southgate Gardens Condo. Assoc., Inc. v. Aspen Specialty Ins. Co.*, 622 F.Supp.2d 1332 (S.D.Fla. 2008) (complying with request for an examination under oath is a condition precedent for maintaining a civil action); *Goldman* (same); *United States Fidelity & Guaranty Co. v. Romay*, 744 So.2d 467 (Fla. 3d DCA 1999) (provision requiring claimant to submit sworn proof of loss is a condition precedent). Perhaps because of the severity of the effect of a condition precedent, it is "a general rule [that] conditions precedent are not favored and courts will not construe provisions to be such, unless required to do so by plain, unambiguous language or by necessary implication." *In re Estate of Boyar*, 592 So.2d 341 (Fla. 4th DCA 1992).

■ Most insurance policies have "cooperation clauses" providing that the insured "shall cooperate with the insurer, attend hearings and trials upon the insurer's request, and shall assist in effecting settlements, *in securing and giving evidence* ... and in the conduct of suits." *Goldman*, 660 So.2d 300, 304 n. 6 (emphasis added). Cooperation clauses are less onerous on insured parties because courts will reject defenses based on alleged material breaches of cooperation clauses if the insurer cannot demonstrate "substantial prejudice" from the breach. While "an insurer need not show prejudice when the insured breaches a condition precedent to

suit," *Goldman*, 660 So.2d 300, 303, the burden is "*on the insurer to demonstrate substantial prejudice* before a breach [of a cooperation clause] would preclude recovery under the policy." *Goldman*, 660 So.2d 300, 304 (emphasis added).

■ Caselaw regarding insurance policies indicate the inspection provision at issue in this case is a cooperation clause. First, the inspection provision helps Lexington obtain evidence, which is one of the key purposes of cooperation clauses identified above. Second, Lexington has not presented a case indicating that inspection provisions are typically considered to be a condition precedent, nor has the Court identified any Florida case suggesting Lexington's assertion that the provision is a condition precedent could be correct. Finally, the rule that "policy provisions limiting liability are to be construed in favor of the insured," *State Farm Fire and Cas. Co. v. Metropolitan Dade Cty.*, 639 So.2d 63 (Fla. 3rd DCA App.1994), weighs in favor of holding the provision is a cooperation clause because a holding that the provision is a condition precedent would make it harder for Coconut Key to recover.

■ As a result, to prevail on its motion for summary judgment, Lexington must show as a matter of law 1) that Coconut Key materially breached the inspection provision, and 2) that Lexington has been substantially prejudiced as a result of that breach. Lexington has not made either showing.

### 1) Material Breach

■ To prevail, Lexington would first need to show as a matter of law that Coconut Key has materially breached the inspection provision. A "total failure" to comply with a post-loss condition may preclude recovery as a matter of law. *Haiman v. Federal Ins. Co.*, 798 So.2d 811,

812 (Fla. 4th DCA 2001). "If, however, the insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by a jury." *Starling v. Allstate Floridian Ins. Co.*, 956 So.2d 511 (Fla. 5th DCA 2007). *See also Schnagel v. State Farm Mut. Auto. Ins. Co.*, 843 So.2d 1037 (Fla. 4th DCA 2003) ("[w]here, as here, an insured cooperates to some degree, the issue of whether there has been a material breach of the insurance contract is one for a jury—not the trial judge."); *Haiman* (failure to produce certain documents did not entitle insurance company to judgment as a matter of law when the claimant produced "volumes of documents" for the insurance company).

Here, Coconut Key has presented sufficient evidence for the jury to decide whether it has sufficiently cooperated with Lexington to allow Lexington adjusters to inspect the premises. The parties do not dispute that Coconut Key has extended invitations for re-inspection four times. Furthermore, the record presented to the Court indicates the blame for Lexington's inability to access units lies chiefly with unit owners and there is no evidence that Coconut Key can compel the owners to assist Lexington. As a result, Lexington has not shown as a matter of law that Coconut Key has materially breached the inspection provision.

### 2) Substantial Prejudice

Even if it could demonstrate Coconut Key's material breach as a matter of law, Lexington could not prevail unless it could also establish substantial prejudice resulting from its inability to access the units at issue. While it may be possible that Lexington needs access to the units at issue to address particularly contentious damages issues, Lexington has not offered any evidence showing that a meaningful amount of Coconut Key's damages are located in the inaccessible units or explained why it must access each and every unit to respond effectively to Coconut Key's claims. Furthermore, Lexington's assertion that it has not found *any* additional damage to unit interiors during re-inspection tends to shows that its inability to access the remaining units has had little impact on its assessment of Coconut Key's claimed damages. Accordingly, Lexington's motion also fails because it has not come forward to demonstrate substantial prejudice. However, if it chooses to do so, Defendant obviously still can present evidence on this issue at trial.

### 2. Defendant's Motion to Strike Plaintiff's Expert Witness Marc Girard

Defendant has filed a Motion to Strike Plaintiff's Expert Witness Marc Girard [DE–60]. Defendant argues that Mr. Girard should be precluded from presenting opinion testimony on the following issues: (1) wind speed and forces in the subject area during Hurricane Wilma, because he is not trained in meteorology and has done no scientific determinations about wind pressures; (2) causation of damage, because he has no engineering or meteorological background and relied on a TSSA report that did not provide an opinion on the causation of the damages it identified; and (3) damage to any units he has not personally inspected, because it was improper for him to extrapolate based on the findings of his own personal inspection of 8 of the 200 units and the TSSA report. As was discussed in detail at the August 21, 2009 hearing, this Motion is GRANTED IN–PART and DENIED IN–PART.

Admission of expert testimony is governed by Federal Rule of Evidence 702, which provides that a "witness qualified as an expert by knowledge, skill, experience, training, or education," may provide expert testimony if

(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods and (3) the witness has applied the principles reliable to the facts of the case.

Fed.R.Evid. 702; *Graff v. Baja Marine Corp.*, 310 Fed.Appx. 298, 302 (11th Cir. 2009). A trial judge has "considerable leeway" in deciding how to determine when a particular expert's testimony is reliable and how to establish reliability. *Id.* at 304.

 In this case, Mr. Girard lacks both the expertise and reliable underlying data needed to provide expert testimony about either wind speeds at Coconut Key during Hurricane Wilma or the cause of the damages he has observed there. He admitted at his deposition that he has no scientific background in pressure damage, did not know the wind speed at Coconut Key during Hurricane Wilma and has made no scientific determinations about cyclic loading or wind pressure at Coconut Key during Hurricane Wilma. While he claimed that the damage he observed was consistent with hurricane damage, he also admitted other causes were possible, that he did not undertake any scientific tests to eliminate alternative causes, that he had no background in engineering and that he would defer to an engineer's opinion about the causes of damage at Coconut Key.

 On the other hand, Mr. Girard does possess the requisite expertise and data to provide opinion testimony about the condition of windows and doors at Coconut Key and the cost of installing windows and doors that would allow Coconut Key's windows and doors to comply with applicable building codes. He has managed a business specializing in window replacement for over four years. The Court does not find his reliance on the TSSA report to be improper since Defendant has not come forward with any evidence to suggest the methodology underlying the TSSA report was unreliable (even though it has presented evidence that the billing of the work underlying the report is suspect). Finally, Mr. Girard's extrapolation from his own inspections and the TSSA report, which together constitute well over 50% of the damaged units, is not so improper that he cannot provide testimony on his opinions at trial.

As a result, Mr. Girard can provide testimony as to the condition of the windows and doors at Coconut Key and cost of replacing windows and doors at Coconut Key so that they comport with the Florida Building Code and the Miami Dade County Building Code. However, Mr. Girard cannot testify about prevailing wind speeds and forces at Coconut Key during Hurricane Wilma or about the *cause* of the condition of the windows and doors at Coconut Key.

### 3. Motion to Strike Defendant's Proposal for Settlement

 Plaintiff has filed a Motion to Strike Defendant's Proposal For Settlement [DE–72]. As was discussed in detail at the August 21, 2009 hearing, this Motion is DENIED. On July 17, 2009, Defendant served upon Plaintiff an Offer of Judgment pursuant to Fed.R.Civ.P. 68 and Florida Statute § 768.79 proposing to pay $250,000.00 in full settlement of the action [DE–72–1]. The Offer stated that it was "inclusive of all damages claimed by Plaintiff ... including all claims for attorneys' fees as attorneys' fees are an element of damages being sought in the Complaint."

Plaintiff now argues that this Offer should be stricken because it "fails to offer any specific amount of attorney fees." However, Florida Statute § 768.79 does not require that each independent element of an Offer of Judgment be specifically quantified. Additionally, Plaintiff's suggestion that Florida Statute § 627.428 re-

.

quires Defendant's Offer to separately set out a specific offer for attorney's fees is not supported by any authority.[3]

### 4. Defendant's Motion to Amend its Answer and Affirmative Defenses to Conform to Newly Discovered Evidence

■ Defendant has filed a Motion to Amend its Answer and Affirmative Defenses to Conform to Newly Discovered Evidence [DE–73] in which it seeks leave to add a Tenth Affirmative Defense.[4] This Tenth Affirmative Defense asserts that Coconut Key has intentionally made material misrepresentations of fact and fraudulently inflated its claim, thereby voiding the policy underlying this action. As was discussed in detail at the August 21, 2009 hearing, this Motion is GRANTED.

While Defendant's Motion comes over six months after the expiration of the deadline for amending pleadings set by the Pretrial Order in this action [DE–18], a scheduling order can be modified for "good cause." Fed.R.Civ.P. 16(b)(4). Defendant has explained how the critical facts underlying its proposed Tenth Affirmative Defense, namely (1) Timothy Eakins' testimony that he did not review the damages figure in an interrogatory response before verifying the response, (2) Lexington's failure to find any additional Wilma damages during re-inspections, and (3) Al Zobec's testimony that he was not asked to provide an estimate for a roof of like kind, were not known to Lexington until the parties were well into discovery. Furthermore, as Defendant's Ninth Affirmative Defense al-

ready asserts that Plaintiff's claim is inflated and would allow the introduction of these facts at trial, Plaintiff cannot be substantially prejudiced by granting Defendant's leave to amend. Accordingly, the Court accepts Defendant's proffered Tenth Affirmative Defense asserting Plaintiff's concealment, misrepresentation and fraud. The Court also accepts Defendant's unopposed revision of its Second Amended Defense omitting reference to a 5% deductible provision.

### 5. Plaintiff's Motions in Limine to Preclude Evidence at Trial

Plaintiff has filed Motions in Limine [DE–74] seeking to exclude three categories of evidence under Federal Rule of Evidence 403, which allows the Court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." As was discussed in detail at the August 21 and 24, 2009 hearings, all three Motions are DENIED.

#### a. Business Dealings

■ First, Plaintiff has moved to exclude evidence "regarding business dealings between Hunter R. Contracting and/or Ken Romain and/or Josh Guinn, and/or Brad LaBonde and Garfinkel Trial Group, et. al. and Affiliates." The parties have submitted deposition testimony from Ken Romain and Jeff Dobbins from both the instant litigation [DE–99] and the lawsuit between Plaintiff's law firm and Hunter R. Contracting, TSSA, John Romain

---

**3.** Moreover, this Motion can be denied because Plaintiff failed to comply with Local Rule 7.1(A)(3) that required Plaintiff's counsel to confer with Defendant's counsel before filing this Motion. This is a critical Rule that promotes efficient litigation. Had it been followed here, both Defendant and the Court may have been spared from taking the time to respond to a motion that has no obvious legal support.

**4.** Defendant's proposed Second Amended Answer also changes its Second Affirmative Defense to eliminate an assertion that Plaintiff may be subject to a 5% deductible instead of a 2% deductible. Plaintiff has not opposed this change.

and Jeff Dobbins [DE–119]. This testimony supports the following: (1) On behalf of Coconut Key, Hunter R. Contracting submitted a claim to Lexington for approximately $5.5 million in December 2007; (2) Hunter R. Contracting and its principal John Romain oversaw the compilation of insurance estimates for clients of the Plaintiff's law firm, including Coconut Key; (3) John Romain and Alan Garfinkel, an attorney with the law firm representing Coconut Key, were both partners in Hunter R. Contracting; and (4) TSSA, with the knowledge of Alan Garfinkel and at the direction of an employee at Plaintiff's law firm, billed Plaintiff's law firm a surcharge for its Coconut Key work that was later passed on to John Romain at Hunter R. Contracting.

This evidence is all relevant and can be introduced by Defendant at trial. Based on the facts above, Hunter R. and Romain were agents of Plaintiff's law firm and of Coconut Key for the purposes of preparing an estimate of damages at Coconut Key for Lexington. Therefore, under Federal Rule of Evidence 801(d)(2)(D), all testimony by Romain and other Hunter R. employees concerning their work on the Coconut Key project can be offered against Coconut Key.

Accordingly, Defendant can present testimony concerning (1) the work of Hunter R.'s employees on Coconut Key, (2) the composition of Hunter R.'s estimate (3) Hunter R.'s billing practices on the Coconut Key project and (4) TSSA's billing on the Coconut Key project, including Mr. Dobbins' testimony that he was instructed by an employee of Plaintiff's firm to impose a surcharge.[5] Furthermore, Defendant can mention these issues during its opening statement provided that it will

present testimony supporting these claims while presenting its case in chief. However, Defendant *cannot* present testimony regarding the litigation between Plaintiff's law firm and Hunter R. Contracting, TSSA, John Romain and Jeff Dobbins because such evidence is not immediately relevant to the facts underlying this case.

### b. TSSA

Second, Plaintiff has moved to exclude testimony at trial by any representative of TSSA Stormsafe, Inc. As was discussed in detail at the August 21, 2009 hearing, this Motion is DENIED. Plaintiff's motion is overbroad as TSSA's report was used by Marc Girard, Plaintiff's expert on windows and doors, to assess the condition of windows and doors at Coconut Key.

### c. Timothy Eakins

Third, Plaintiff has moved to exclude testimony from Timothy Eakins about discrepancies between draft interrogatory responses he reviewed and final interrogatory responses he verified. As was discussed in detail at the August 21, 2009 hearing, this Motion is DENIED. This evidence is relevant to Lexington's inflation and misrepresentation defenses.

### 6. Motion to Exclude Defendant's Second Affirmative Defense

Plaintiff has agreed to withdraw its Motion to Exclude Lexington Insurance Company's Second Affirmative Defense [DE–76], thus it is moot.

### 7. Motion to Exclude Defendant's Seventh and Eighth Affirmative Defenses

Finally, Plaintiff moves to strike Lexington's Seventh and Eighth Affirmative De-

---

**5.** In discussing Hunter R.'s and TSSA's billing practices on the Coconut Key project, Defendant can identify by name the individuals at Plaintiff's law firm that were involved in directing or organizing those practices. Any statements to the contrary made at the August 24, 2009 hearing are hereby superceded.

fenses [DE–77]. Lexington's Seventh Affirmative Defense provides that the action can be barred in its entirety if Plaintiff has failed to comply with the underlying policy's post-loss obligations or satisfy conditions precedent to maintaining the action. Lexington's Eighth Affirmative Defense asserts that Coconut Key cannot bring a legal action against Lexington without "full compliance" with the all of the terms of the policy.

Plaintiff argues, in what is in effect a poorly disguised and untimely motion for summary judgment, that both Defenses should be stricken because Lexington's corporate representative allegedly testified in his deposition that Lexington had timely notice of the claim and that there are no specific conditions precedent that the Plaintiff failed to comply with. However, Plaintiff has failed to attach or quote from the deposition testimony in question, making it impossible for the Court to examine record evidence to assess Plaintiff's Motion. Additionally, Defendant has provided the Court with record evidence supporting both Affirmative Defenses. Accordingly, Plaintiff's Motion must be denied.

Based on the foregoing, it is hereby

ORDERED that

(1) Defendant's Motion for Partial Summary Judgment [DE–59] is DENIED;

(2) Defendant's Motion to Strike Plaintiff's Expert Marc Girard [DE–60] is GRANTED IN–PART and DENIED IN–PART;

(3) Plaintiff's Motion to Strike Defendant's Proposal For Settlement [DE–72] is DENIED;

(4) Defendant's Motion to Amend its Answer and Affirmative Defenses to Conform to Newly Discovery Evidence [DE–73] is GRANTED;

(5) Plaintiff's Motions in Limine to Preclude Evidence at Trial [DE–74] are each DENIED;

(6) Plaintiff's Motion in Limine to Exclude Lexington Insurance Company's Second Affirmative Defense [DE–76] is DENIED AS MOOT; and

(7) Plaintiff's Motion in Limine to Exclude Lexington Insurance Company's Seventh and Eighth Affirmative Defense is DENIED.