**VISION I HOMEOWNERS ASSOCIATION, INC., a Florida non-profit corporation, Plaintiff,**

v.

**ASPEN SPECIALTY INSURANCE COMPANY, a North Dakota corporation, and James River Insurance Company, an Ohio corporation, Defendants.**

**Case No. 08–81211–CIV.**

United States District Court, S.D. Florida.

Dec. 15, 2009.

* **For a period of sixty (60) days.**

Daniel S. Rosenbaum, Jennilynn E. Lawrence, John Marcus Siracusa, Mark Gerard Keegan, Richard Chambers Valuntas, Katzman, Garfinkel, Rosenbaum, LLP, West Palm Beach, FL, for Plaintiff.

Max Galen Factor, William Lanier Wallis, Gina G. Smith, William Lanier Wallis, Butler Pappas Weihmuller Katz et al., Tallahassee, FL, Richard Michael Dunn, Anaysa Gallardo, Cozen O'Connor, Miami, FL, for Defendants.

### ORDER DENYING MOTION TO STRIKE

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Defendant James River Insurance Company's Motion to Strike Mark Phillips as an Expert Witness and Motion in Limine to Exclude from Evidence the Phillips Draft Report and Testimony Related Thereto [DE–127], filed herein on November 9, 2009. The Court has carefully considered the Motion, Plaintiffs Response [DE–135], Defendant's Reply [DE–148], the argu-

ments presented by counsel at the hearing before the undersigned on December 11, 2009, and is otherwise fully advised in the premises.

## I. BACKGROUND

Plaintiff Vision I Homeowners Association, Inc. ("Vision I") filed the above-styled action on October 21, 2008. [DE–1]. Vision I is a homeowners association and not-for-profit Florida corporation, doing business in Palm Beach County. Defendant Aspen Specialty Insurance company ("Aspen") is a foreign corporation and insurance carrier transacting insurance in Palm Beach County, Florida. It is incorporated in North Dakota and has its principal place of business in Massachusetts. Aspen provided property insurance, Policy No. PP 002120, to Vision I for the twelve month period commencing May 10, 2005.

Defendant James River Insurance Company ("James River") is a foreign corporation and insurance carrier transacting insurance in Palm Beach County, Florida. It is incorporated in Ohio and has its principal place of business in Virginia. It issued excess property coverage, Policy No. 00009793, for the twelve month period commencing May 10, 2005.

According to the Complaint, the intent of the contracts was to provide commercial lines residential property insurance coverage, including, but not limited to, coverage for hurricanes, for direct physical loss to the insured property for the twelve month period commencing May 10, 2005. Hurricane Wilma struck Palm Beach County on October 24, 2005, and the insured property sustained damages. The Complaint alleges that Vision I timely reported these damages to Aspen and James River and that the insurers had an opportunity to inspect said damage. However, Plaintiff alleges Defendants have failed to provide Vision I with any estimate of the damages and have failed to adjust, pay, and/or settle the claim. Vision I seeks declaratory judgment, compensatory damages, costs and attorneys' fees, and prejudgment interest.

On November 9, 2009, Defendant filed the instant Motion, seeking to exclude Mark Phillips as an expert in this well as exclude the Phillips Draft Report and any testimony regarding the Phillips Draft Report. Defendant retained William Kramer & Associates ("WKA") as its independent adjuster in connection with the Vision I property damage claim. WKA assigned one of its in-house adjusters Mark Phillips ("Phillips") to inspect Vision I in December of 2007. Phillips created a draft report ("Phillips Draft Report") which discussed the inspection of the property and recommended James River create a $6.2 million reserve in connection with the claim. James River argues that Phillips admitted in his deposition that the Phillips Draft Report was a work in progress, that it was done in a short amount of time, and that there was additional information needed before making a final determination. James River also contends it was never provided a copy of the Phillips Draft Report.

WKA had a senior adjuster take over the Vision I file and forwarded a report to James River ("Final Report") which recommended hiring experts to assess the damage. This report did not contain any reserve recommendation nor did it conclude that Vision I suffered wind damage. Phillips left WKA in March of 2008 and in June of 2008 became an employee of Plaintiff's law firm. Phillips was subsequently terminated from the law firm and then three months later retained as an expert in this case and paid a $2500 retainer. Phillips testified at his deposition that he plans to provide expert testimony as to wind damages and water damages; however, James River argues he is not an expert on

these subjects as he has never been qualified as an expert, he is not a meteorologist or engineer, and does not know the wind speed information relating to Vision I. James River argues that Phillips admitted he relied upon information from other people for much of his information, did not consider the James River policy in making his reserve recommendation and has not inspected the property since 2007 or made any further damage analysis. Thus, James River argues that Phillips should be excluded as an expert because there is nothing about his testimony that could possibly assist the trier of fact in understanding the evidence in this case.

### (i) Qualification as an Expert

██ First, James River argues that Phillips has never been qualified as an expert on wind damages, is not a meteorologist or engineer, and does not know the wind speed information for Vision I and, therefore, should be prevented from providing expert testimony as to wind damages and water damage. James River cites *Coconut Key Homeowners Assoc. Inc. v. Lexington Ins. Co.*, 649 F.Supp.2d 1363, 1371 (S.D.Fla.2009) where expert testimony was excluded when the purported expert lacked the expertise and data needed to provide expert testimony about wind speed or the cause of damage. James River argues that in *Coconut Key*, the purported expert admitted, much like Phillips, that he had no scientific background in pressure damage, did not know the wind speed at the condo, and he had no background in engineering and, therefore, was properly excluded from testifying as to wind speed or the cause of the damage. *Id.*

In response, Plaintiff argues that motions to strike are generally disfavored and that Phillips is qualified to testify as an expert. Plaintiff argues that Phillips is a licensed independent insurance adjuster whom James River originally sent to as-

certain the damage to Vision I but now argues is not competent to testify and provide opinions. Plaintiff points out that under Florida law an independent insurance adjuster is required to have experience, training or instruction concerning adjusting of damage or loss under insurance contracts. Fla. Stat. § 626.866. Plaintiff argues that Phillips has handled more than 400 claims for WKA and, thus, he clearly qualifies as an expert. Plaintiff points to several cases holding that an insurance adjuster is qualified to testify as an expert and that the adjuster's reliance upon the work of others does not disqualify the adjuster from testifying. *See Chalfonte Condo. Apartment Assoc. v. QBE Ins. Co.*, Case No. 06–81046–CIV–MIDDLE-BROOKS/JOHNSON (DE–106). Plaintiff also argues that contrary to James River's assertions that Phillips did not know the wind speed information at Vision I, Phillips reviewed extensive weather reports and provided testimony regarding the slope of the roofs and life span of the shingles. Thus, Plaintiff argues that James River's concerns go to the weight of Phillips' testimony and not to the admissibility.

Further, Plaintiff distinguishes the case relied upon by James River, *Coconut Key*, on the ground that it did not involve the testimony of an experienced insurance adjuster as the expert in that case only examined 8 of the 200 units whereas Phillips examined nearly every unit at Vision I. 2009 WL at 2700174. Thus, Plaintiff argues Phillips is competent to testify as to the cause of Vision I's damage. Even assuming *arguendo* that Phillips could not testify as an expert, Plaintiff argues that he would still be able to testify as a fact witness and provide lay opinion pursuant to Federal Rule of Evidence 701 since such testimony would be based on his perception during the inspection of Vision I and would be helpful to an understanding of the damage Wilma caused to Vision I. *See*

*Preis v. Lexington Ins. Co.*, 279 Fed.Appx. 940, 943 (11th Cir.2008) (insurance adjuster properly provided lay opinion based on personal observations and inspection).

James River counters that it is not enough that Phillips is a licensed insurance adjuster when his testimony demonstrates he remembers very little from his inspection, additional information is still needed to form an opinion, and no analysis or testing to provide expert testimony as to wind damages has been conducted. Moreover, James River argues that Plaintiff's attempt to distinguish *Coconut Key* is meritless, as the fact that Phillips is a licensed independent adjuster does not transform him into an expert on wind damage when he testified he did not have knowledge of the requisite data and made no effort to learn or analyze the same. Thus, James River argues that there is nothing about Phillips' expert testimony that could assist the jury in understanding the evidence when Phillips is unprepared and unqualified to render an expert opinion.

 The qualification standard for expert testimony is "not stringent," and "so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Kilpatrick v. Breg, Inc.*, Case No. 08–10052–CIV, 2009 WL 2058384 (S.D.Fla. June 25, 2009) (quoting *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 585 (N.D.Fla.2009)). Relevant testimony from a qualified expert is only admissible if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation. *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir.1988). However, absolute certainty is not required. *Id.* "Expert testimony is admissible which connects conditions existing later to those existing earlier provided the connection is concluded logically." *Id.* Whether a logical basis for admitting the testimony has been estab-

lished is within the court's discretion, and the weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility. *Id.* at 663. Thus, "[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility." *Id.*

The Court concludes that Phillips can be properly admitted as an expert in this case and that James River's qualifications arguments are without merit. The Court is persuaded that Phillips, a licensed insurance adjuster who has handled over 400 claims for WKA, is qualified to testify as an expert as to the matters in this case. The issues raised by James River in regard to Phillips' qualifications and the matters considered by Phillips in developing his opinion go to the weight to be given his testimony and not the admissibility, which may be properly counter-balanced by pointing out any weaknesses in the testimony on cross-examination. *Jones*, 861 F.2d at 663.

### (ii) Former Employee

 James River also argues that Phillips should be excluded because Plaintiff retained Phillips simply because of the unfair prejudice and jury confusion created by Phillips' testimony related to the Phillips Draft Report since Phillips created the report while he previously worked on behalf of James River. James River cites *Saewitz v. Lexington Ins. Co.*, 133 Fed. Appx. 695, 700 (11th Cir.2005) where the 11th Circuit granted a motion in limine which prevented an expert for the defendant from testifying regarding prior work on behalf of the plaintiff and a report prepared in connection with the previous work for the plaintiff. The 11th Circuit explained that there would be unfair prejudice that outweighs any probative value

from the jury being informed that the expert had been previously retained by plaintiff in regard to the same insurance claim and was now testifying for the defendant. *Id.* Accordingly, the 11th Circuit found that the district court properly disallowed the expert testimony and only allowed the witness to testify as a fact witness regarding his personal observation during the inspection. *Id.* James River also cites *Peterson v. Willie*, 81 F.3d 1033 (11th Cir.1996) for the proposition that there is an "explosive" prejudicial effect that results from informing a jury that an expert originally consulted the other side. Thus, James River argues that Phillips should be excluded as an expert witness since he was previously retained by WKA on behalf of James River. In addition, James River argues that Phillips should also be excluded as a fact witness as he recalls nothing about the details of the inspection and, thus, there is nothing Phillips can properly testify to and the Phillips Draft Report and any testimony related to it must be excluded.

In response, Plaintiff contends that James River's reliance on *Saewitz* and *Peterson* is misplaced since those cases involved situations where the defendant attempted to call a witness who was previously retained by the plaintiff as an expert and listed as a testifying expert. 133 Fed.Appx. at 700, 81 F.3d at 1037. Here, Plaintiff argues that James River never retained Phillips as an expert, or disclosed him as a testifying expert. Also, here no other witness can present testimony similar to the testimony that would be offered by Phillips. Thus, Plaintiff argues that Phillips' testimony should not be excluded. James River counters that this case is indeed analogous to the facts in *Saewitz* and *Peterson.* Further, James River argues that Plaintiff wants to engage in a collateral mini-trial whether the Phillips Draft Report was forged and sent to James River but

these arguments do not bear on the issue before the court—i.e., whether Vision I actually suffered damage due to Hurricane Wilma. James River also contends that Phillips admits that he based many of his statements in the Phillips Draft Report on information from Mr. Oakes and, therefore, his testimony would be duplicative of the testimony of Mr. Oakes and others.

Once again, the Court finds James River's arguments to be without merit and the cases cited by James River to be distinguishable. Both the *Saewitz* and *Peterson* cases are distinguishable from the present facts as those cases involved a situation where the party had previously retained the witness as an expert and designated the expert to testify at trial. In *Peterson,* the plaintiff had retained the expert witness and designated him as an expert witness expected to testify at trial, however, after the expert reexamined the plaintiff without counsel for the plaintiffs instruction or knowledge, the expert attempted to change his opinion. 81 F.3d at 1036. As a result, the plaintiff's subsequent counsel withdrew the expert designation and filed a motion in limine to preclude the expert from testifying on behalf of the defendant. *Id.* at 1037. Consequently, the Eleventh Circuit determined it was error to permit the defendant's counsel to elicit the fact that the expert had been previously retained by an attorney representing the plaintiff. Nevertheless, the Eleventh Circuit did not reverse the district court's decision finding that the error did not rise to the level of substantial prejudice mandating a reversal. *Id.* at 1039. Instead, the Court was persuaded that any possible prejudice was neutralized by the fact that counsel for the plaintiff twice informed the jury that the expert was not hired by them but the plaintiff's former counsel. *Id.* at 1038.

On the contrary here, Phillips was never retained by James River as a consulting or testifying expert or designated by James River to testify as an expert at trial. Importantly, Phillips was an employee of WKA not James River who conducted his inspection of Vision I nearly a year prior to this litigation was commenced, and James River does not contend that Phillips was consulted by James River in preparation for trial, or exposed to confidential information related to the trial. Nor does James River contend, as was the case in *Peterson,* that Phillips subsequently changed his opinion in a manner that would suggest to the jury that certain evidence was being suppressed by James River. Instead, Phillips purports to offer the same opinions and testimony as those contained in the Phillips Draft Report. And, it is impossible for the Court to conclude at this time that Phillips' testimony would be duplicative or cumulative of other testimony to be offered at trial. As explained on the record at the hearing before the undersigned, if it appears at trial that such testimony would indeed by cumulative, this argument can be re-visited. Finally, the Court is persuaded that any purported prejudicial effect of Phillips' association with WKA can be properly counter-balanced by cross-examination regarding his subsequent employment with Plaintiff, termination and unusual retention by Plaintiff as an expert. *Jones,* 861 F.2d at 663. Therefore, the Court concludes that James River's concerns go to the weight to be given Phillips' testimony and not the admissibility.

#### (iii) Undue Prejudice

■ In addition, James River argues that the testimony of Phillips would create prejudice and jury confusion because James River would be branded with the Phillips Draft Report even though James River was never provided with the report and Phillips admitted it was a work in progress. Further, James River argues that Plaintiff's introduction of Phillips as an expert is wrong because it creates the impression of paying a witness for factual testimony. *Rentclub, Inc. v. Transamerica Rental Fin. Corp.,* 811 F.Supp. 651, 653–657 (M.D.Fla.1992). In response, Plaintiff disputes James River's claim that it never received the Phillips Draft Report. Plaintiff argues that WKA acted as James River's agent and WKA knew about the Phillips Draft Report. Thus, Plaintiff argues that the knowledge of WKA, as James River's agent, is imputed to James River. Plaintiff also distinguishes the present facts from *Rentclub,* on the ground that here Plaintiff has simply retained an ex-employee of WKA as an expert and the 11th Circuit has not recognized any blanket rule against side-switching experts. 811 F.Supp. at 653–657.

The Court concludes that these arguments go to the weight to be given Phillips' testimony and not to the admissibility. In addition, the Court finds that Phillips' testimony can be properly counter-balanced by cross-examination as to Phillips retention by Plaintiff's counsel and payment of fees as an expert.

#### (iv) Irrelevant to Claims

■ Finally, James River argues that the Phillips Draft Report and testimony related to the report should be excluded because this evidence is irrelevant to Plaintiffs claims. James River argues that the Phillips Draft Report recommends a reserve that is higher than Plaintiff's claim for damages and, therefore, is not probative to Plaintiff's damages. Also, Phillips admitted the report was a draft and a work in progress. In response, Plaintiff argues that the Phillips Draft Report is highly relevant to this case because it details the nature and extent of Vision I's damages and proves James River was

aware in early 2008 that Vision I sustained more than $6 million in damages from Hurricane Wilma. Plaintiff also argues the report is relevant to whether James River breached the insurance contract by failing to adjust the claim and determine the value of lost or damaged property and failing to pay the actual cash value. Plaintiff argues that whether the report was a draft or a work in progress goes to the weight to be afforded the report not the admissibility of the report. Also, Plaintiff argues that the statements contained in the report are admissible as an admission against the insurance company. Plaintiff argues that James River has the burden of proving exclusion of evidence of the report is warranted under Fed.R.Evid. 403, but James River does not explain how this burden is met.

Again, the Court concludes that James River's arguments go to the weight to be given the Draft Report and testimony related to the Draft Report and not to admissibility. Whether the Phillips Draft Report was indeed a draft and work in progress can be properly considered by the jury in determining what weight to give that evidence. In addition, the Court concludes it is impossible to determine at this time whether the Phillips Draft Report and testimony related to the Phillips Draft Report is completely irrelevant to Plaintiff's claims as it may in fact serve as evidence of whether James River breached the contract by failing to adjust.

## II. *CONCLUSION*

Accordingly, based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendant James River Insurance Company's Motion to Strike Mark Phillips as an Expert Witness and Motion in Limine to Exclude from Evidence the Phillips Draft

Report and Testimony Related Thereto [DE–127] is hereby **DENIED.**