Christian Fernando GIRALDO, Plaintiff,

v.

**CITY OF HOLLYWOOD FLORIDA,** et al., Defendants.

**CASE NO. 14–61781–CIV**

United States District Court, S.D. Florida.

Signed October 19, 2015

Angela Barbosa Wilborn, Khari Elizabeth Taustin, Masimba Maxwell Mutamba, Morris, Laing, Evans, Brock and Kennedy, Chtd., Wellington, FL, Kyle William Ohlenschlaeger, Jeremy W. Harris, Morris, Laing, Evans, Brock, Kennedy Chtd., West Palm Beach, FL, for Christian Fernando Giraldo.

Jeffrey Phillip Sheffel, City Of Hollywood, Hollywood, FL, Joanna Doerfel, Kelly Rains Jesson, Daniel Lawrence Abbott, Weiss Serota Helfman Pastoriza Cole & Boniske, Fort Lauderdale, FL, Douglas Andrew Harrison, Office of the City Attorney, Miami, FL, Justin Daniel Luger, Wiess Serota Helfman Pastoriza Cole & Boniske P.L., Coral Gables, FL, Tamatha Suzanne Alvarez, Martin, Lister & Alvarez, Weston, FL, for Defendants.

## OMNIBUS ORDER

WILLIAM P. DIMITROULEAS,
United States District Judge

THIS CAUSE is before the Court upon Defendants, Michael Malone, Raul Toledo and Brittany Schendel's Motion for Summary Judgment [DE 106], filed herein on August 10, 2015, and City of Hollywood's Motion for Summary Judgment [DE 110], filed herein on August 14, 2015 (collectively, the "Motions for Summary Judgment"), and the City of Hollywood's Motion to Exclude Opinions Rendered by Expert Witness George Kirkham on Behalf of Plaintiff Christian Giraldo [DE 126], filed herein on September 21, 2015 (the "Daubert Motion"). The Court has carefully considered the Motions for Summary Judgment [DE 106, 110], the parties' briefs and filings, and is otherwise fully advised in the premises.

### I. Background

Plaintiff, Christian Fernando Geraldo, commenced this action on August 5, 2014. The operative complaint is the Third Amended Complaint (the "TAC"), which names four defendants: City of Hollywood, Florida ("Hollywood"); Officer Raul Toledo, in his individual capacity; Officer Michael Malone, in his individual capacity; and Officer Brittany Schendel, in her individual capacity. [DE 99]. Plaintiff alleges

violations of the First Amendment, Fourth Amendment, and Fourteenth Amendment arising from his arrest on September 29, 2013 by the Officers. [*Id.*]

The parties have provided their respective Statements of Material Facts [DE 105, 109, 122, 123, 130] with various factual assertions that are supported by the record. In some instances, the parties have not contested their adversaries' assertions. The Court will deem some of these uncontested factual assertions to be admitted. *See* S.D. Fla. L.R. 56.1(b); Fed.R.Civ.P. 56(c), (e). The Court will now set forth the relevant admitted facts, as well as certain facts that remain in dispute.

On September 29, 2013, Giraldo called 911, requesting that officers come to his home to respond to a domestic dispute between himself and his girlfriend, Aurora Hernandez–Calvino ("Calvino"). [DE 105 ¶ 6]. Officers Malone, Toledo, Schendel, and Mendez responded to the scene. [*Id.* ¶ 7]. In domestic violence situations, it is protocol to interview individuals separately. [*Id.* ¶ 13]. Officers Schendel and Malone interviewed Giraldo while Officers Toledo and Mendez interviewed Calvino. [*Id.* ¶ 14]. Calvino told Officer Toledo that she and Giraldo's verbal argument escalated to a physical argument and that she had been pinned on the bed. [*Id.* ¶ 16]. Overhearing Calvino tell the police officers that Giraldo had a concealed weapons permit, was a martial arts instructor, and was a marine, Giraldo interrupted Schendel as she was questioning him and went over to the officers speaking to Calvino to explain himself. [*Id.* ¶¶ 19–20]. Giraldo testified in deposition that as he tried to provide the weapons permit to Toledo, Toledo "shrugged [him] off" and said "I'm not asking you the f*cking question, give it to her." [DE 104–2 at 113:13–15]. Giraldo

provided Schendel with his license, and she resumed questioning him, saying "[c]ome on, I'm talking to you. Pay attention to me. Let me hear your side of the story. You can talk to them later. They need to discuss what she wants to say, and I'm discussing what you want to say." [DE 105 ¶¶ 22–23]. The parties dispute the events that unfolded at this point; it is uncontroverted that ultimately Giraldo was removed from the apartment. [*Id.* ¶ 38]. Schendel then spoke to Calvino, who told her that she and Giraldo had an argument. [*Id.* ¶ 39]. During the argument, Giraldo threw the remote and broke it, removed the light bulbs from the ceiling and put them very high up to where she could not reach them, pushed her on the bed and climbed on top of her as she fought to get away. [*Id.*]. Calvino pointed out the bed that she was held down on, the smashed remote, and the light bulbs that had been removed. [*Id.* ¶ 40]. Calvino then filled out a Complaint Affidavit, writing down her version of events. [*Id.* ¶ 43]. That sworn affidavit states that Giraldo removed the light bulbs so Calvino could not see as she tried to pack, that he threw and broke a remote, grabbed her from behind, and that he threw her on the bed. [DE 101–1]. It further states that Giraldo used force with his head onto Calvino's so she pulled his t-shirt until it ripped and he got off of her. [*Id.*].

Officer Malone testified in deposition that he does not remember seeing any red marks or bruises on Giraldo. [DE 101–1 at 18:12–13; DE 122 ¶ 70]. Officer Schendel testified in deposition that she does not recall seeing any red marks on Giraldo. [DE 103–1 at 22:12–19; DE 122 ¶ 83]. According to Officer Schendel's testimony, only she and Officer Malone composed the police report. [DE 103–1 at 23–34]. The Police Report, which is signed by Malone,

as the Officer/Affiant, and Schendel, as the Notary, states that "this Officer did observe the remote in the bathroom to be smashed. This Officer did not see any physical marks on either party." [DE 99–1]. Only Officer Toledo testified in deposition that he saw a "little tear on the collar" of Giraldo's shirt and "some red marks on his neck"; Officer Toledo does not remember sharing that observation with Malone or Schendel. [DE 102–1 at 15:13–20, 37:6–11; DE 122 ¶ 88].

## II. Standard of Review

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Sauve v. Lamberti*, 597 F.Supp.2d 1312, 1315 (S.D.Fla.2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir.2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 Fed.Appx. 16, 26 (11th Cir.2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment;

there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26–27 (citing *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir.2013) (citation omitted).

## III. Discussion

### A. Count I and Count II: Qualified Immunity

Count I alleges unlawful seizure in violation of the Fourth Amendment because the seizure was unreasonable and Count II alleges unlawful arrest in violation of the Fourteenth Amendment because the arrest was unsupported by probable cause or a valid warrant. The Officers argue that they are entitled to qualified immunity, and so Counts I and II should be dismissed.

■ When analyzing qualified immunity at summary judgment, courts "may not resolve genuine disputes of fact in favor of the party seeking summary judgment" and must view the evidence in the light most favorable to the opposing party in determining whether genuine issues of material fact exist. *Tolan v. Cotton*, ── U.S. ──, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014). "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clear-

ly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir.2003) (internal quotations omitted). The Eleventh Circuit has explained that:

> The threshold question is: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? If a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine whether the right was clearly established.

*Barbee v. Naphcare, Inc.*, 216 Fed.Appx. 851, 852–53 (11th Cir.2007) (internal quotation marks and citations omitted).

■ Plaintiff does not dispute that all Defendants acted within their discretion; thus, the burden shifts to Plaintiff to show that a violation of a constitutional right has been alleged, and that the right is clearly established. The Court need not decide these two prongs sequentially. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). A right is clearly established where there is: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291–92 (11th Cir.2009). "It is clearly established that an arrest made without probable cause violates the Fourth Amendment." *Jessup v. Miami–Dade Cnty.*, 440 Fed.Appx. 689, 694 (11th Cir.2011) (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir.1998)). Where the

officers had arguable probable cause for an alleged unlawful arrest, that is, where "reasonable officers in the same circumstances and possessing the same knowledge as the [officer] *could have believed* that probable cause existed to arrest," the officer is entitled to qualified immunity. *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137 (11th Cir.2007) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002)).

■ Based on the undisputed facts, the Officers responding to the scene had arguable probable cause to arrest Giraldo. Calvino's sworn complaint is itself sufficient to support arguable probable cause. Plaintiff stresses that officers may rely on a victim's complaint only "absent allegations indicating that their reliance was unreasonable." *Lawson v. City of Miami Beach*, 908 F.Supp.2d 1285, 1290 (S.D.Fla. 2012); *see also Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir.1995) ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.").

As this Court explained in its Omnibus Order on Motions to Dismiss:

> "Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause." *Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998). However, it is not possible to determine whether arguable probable cause existed as a matter of law where certain factual questions exist. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir.2004). In *Kingsland*, the plaintiff and an off-duty police

officer were involved in an automobile accident; the parties each insisted that the other had caused the collision. The plaintiff alleged that other officers responding to the scene failed to attend to her medically or to elicit her version of events, instead focusing on the off-duty officer and ultimately arresting plaintiff for driving under the influence, though plaintiff alleges she was not. *Id.* at 1223–25. The Eleventh Circuit held that arguable probable cause could not be established as a matter of law at the summary judgment stage where "the facts support[ed] a conclusion that the arrest affidavit included recklessly or deliberately false statements that are material to a finding of probable cause" and where there were "several questions of fact regarding the information the [defendant officers] possessed or could have possessed had they chosen to investigate as a reasonable officer would have done." *Kingsland,* 382 F.3d at 1232–33.

[DE 93 at 7–8].

The record does not reveal circumstances suggesting that the Officers should have doubted the veracity of Calvino's statement or that relying on her statement would have been unreasonable. To the contrary, the Officers have shown that they encountered evidence corroborating her statements. Consistent with Calvino's story, there was a bed in disarray, a broken remote, and light bulbs removed from their sockets. Even assuming that Calvino fabricated her story, the evidence presented to the Court by the Officers establishes that reasonable officers in the same circumstances and possessing the same knowledge as they did could have believed that probable cause existed to arrest Giraldo. Plaintiff's suggestion that factual questions exist as to whether the officers fabricated or unreasonably disregarded certain pieces of evidence as did the officers in *Kingsland* is unsupported, even viewing the evidence in the light most favorable to Plaintiff. Plaintiff contends that the Officers unreasonably disregarded or failed to obtain Giraldo's side of the story. It is uncontroverted, however, that Officer Schendel specifically attempted to obtain Giraldo's story, explicitly urging him to "[l]et me hear your side of the story" despite Giraldo's attempts to engage Officer Toledo as Toledo spoke with Calvino. While the Police Report states that there were no physical marks on either party, the two officers who contributed to the report, Schendel and Malone, testified that they did not observe any marks. It mere speculation that Schendel and Malone actually did observe marks on Giraldo, yet deliberately chose to exclude that information from the Report in order to establish probable cause to arrest. Plaintiff also points to the testimony of Dr. Kirkham, a criminologist, that a reasonably competent officer would have arrested Calvino instead of Giraldo. *See* [DE 120–2 at 253:20–23]. The Court has not considered Dr. Kirkham's testimony as to the legal issue of whether arguable probable cause existed. *See Hopkins v. City of Huntsville, Ala.,* No. CV–13–S–429–NE, 2014 WL 5488403, at *22 (N.D.Ala. Oct. 29, 2014) (explaining that in deciding summary judgment the court would not consider the testimony of plaintiff's expert witness regarding "the ultimate issue of whether probable cause was present to justify arrest and search.").

Thus, the Court finds that Officers Schendel, Malone, and Toledo are entitled to qualified immunity and will grant summary judgment in their favor as to Counts I and II.

## B. Count IV: Gender Discrimination in Violation of the Fourteenth Amendment

Count IV alleges that Defendant Officers engaged in intentional discrimination against Plaintiff in violation of the Fourteenth Amendment. Plaintiff opines that it is clearly established that gender discrimination is an infringement of the equal protection clause, and alleges that the Officers engaged in intentional discrimination in determining that Giraldo was the aggressor and arresting him. [DE 99 ¶¶ 201–203, 217].

■ To state a claim under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff must allege that: "(1) he is similarly situated with other persons who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race or gender." *Ardis v. Danheisser*, No. 3:13CV366/MCR/EMT, 2014 WL 103232, at *6 (N.D.Fla. Jan. 10, 2014) (quoting *Jones v. Ray*, 279 F.3d 944, 947 (11th Cir.2001)). Plaintiff must also allege that the Defendants acted with intent to discriminate against him; "[c]onclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient." *Ardis*, 2014 WL 103232, at *6 (citing *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987)).

■ The Officers argue that Plaintiff has failed to allege the first prong. Giraldo avers that he has alleged that those similarly situated are other victims who called for police assistance following a domestic disturbance. The Officers next argue that Giraldo has failed to provide any evidence that the Officers intentionally discriminated against him. In response, Plaintiff asserts that he has alleged that the Officers intentionally discriminated against him, and points to deposition testimony by Schendel. Schendel testified that she was a victim of domestic violence at the hands of her ex-boyfriend, who lied to the police officers that responded to the domestic violence call. [DE 103–1 at 32:17–33:17].[1] Schendel also answered "no" when asked whether anything could have changed her mind as to whether to arrest Giraldo from the time she "walked from the apartment until the time [she] got to Mr. Giraldo." [DE 103–1 at 34:24–35:3]. Plaintiff offers nothing as to the other officers. Officer Schendel's deposition testimony that she was once a victim of domestic violence is attenuated and is not sufficient to create a genuine issue of material fact as to whether the officers improperly acted on the basis of Giraldo's gender. Rather, Plaintiff has extended only mere conjecture that discriminatory intent based on his gender motivated his arrest and the events leading up to it. As the district court explained in a factually similar case, "[e]ven if there could be a reasonable disagreement as to who was the primary aggressor the evidence is not so 'compelling' to justify the inference that the officer's contrary view was motivated by gender." *Buckheit v. Dennis*, No. C

---

1. Plaintiff's expert, George Kirkham, offered opinions in deposition regarding Officer Schendel's experience with domestic violence. Kirkham contends that the experience "obviously contaminated her," explaining that "you can look at the record, it's pretty clear." [DE 120–1 at 147:2–11; 183:3–7]. The Court

has not considered such opinions, as they invade the province of the jury and are without reliable methodology. *See* III.C., *infra*. In any event, in Plaintiff's response to Hollywood's Daubert Motion, Plaintiff disavows any intention of eliciting such opinions from Kirkham. *See* [DE 133 at 12].

09–5000 JCS, 2012 WL 1166077, at *14 (N.D.Cal. Apr. 6, 2012). The Court finds that the Officers are entitled to summary judgment in their favor as to the intentional discrimination claim.[2]

## C. Hollywood's Daubert Motion

In its Daubert Motion, Hollywood argues for the exclusion of testimony by Plaintiff's expert, George Kirkham, on a number of different topics. As the Court has already determined that the Officers are entitled to summary judgment, the Court will now discuss only the portions of the Daubert Motion that are relevant to deciding Hollywood's Motion for Summary Judgment; the remaining portions are moot.

■ Rule 702,[3] as explained by *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and its progeny, governs the admissibility of expert testimony. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir.2005). "Under Rule 702 and *Daubert*, district courts must act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant." *Rink*, 400 F.3d at 1291 (quoting *Daubert*, 509 U.S. at 589,

113 S.Ct. 2786). Expert evidence is reliable and relevant—and, therefore, admissible—when the following factors are met:

(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches her conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

■ *Id.* (internal quotations omitted). The party offering the expert must prove admissibility—under these three prongs— by a preponderance of the evidence. *Daubert*, 509 U.S. at 589, 113 S.Ct. 2786. When determining whether a party has met its burden with respect to the second prong, "[a] trial judge has 'considerable leeway' in deciding how to determine when a particular expert's testimony is reliable and how to establish reliability." *Coconut Key Homeowners Ass'n, Inc. v. Lexington Ins. Co.*, 649 F.Supp.2d 1363, 1371 (S.D.Fla.2009) (quoting *Graff v. Baja Marine Corp.*, 310 Fed.Appx. 298, 302 (11th

**2.** The Officers also argue that they are entitled to qualified immunity as to Count IV. The Court need not reach this issue, however, as it has appropriately first determined that summary judgment is warranted on the merits of the claim. *See Lindsey v. Shalmy*, 29 F.3d 1382, 1385 (9th Cir.1994) (Explaining in employment discrimination action that with respect to constitutional torts with an element of intent or motive "[t]he court must satisfy itself that there is sufficient 'direct or circumstantial evidence' of intent to create a genuine issue of fact for the jury, before it can deny summary judgment on the ground of [qualified] immunity.")

**3.** Rule 702 provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.
Fed.R.Evid. 702.

Cir.2009)). Under the third prong, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *U.S. v. Frazier*, 387 F.3d 1244, 1262 (11th Cir.2004). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262–63. "[W]here an expert opinion has a tendency to confuse the trier of fact, it may not satisfy the helpfulness prong." *J.G. v. Carnival Corp.*, No. 12–21089–CIV, 2013 WL 752697, at *4 (S.D.Fla. Feb. 27, 2013) (citing *Frazier*, 387 F.3d at 1263).

■ In the Response to Hollywood's Motion for Summary Judgment, Plaintiff invokes the following deposition testimony from Kirkham:

- That "consider[ing] the physical size, relative size of two people [ ] just translates blatantly into gender." [*Id.*];

- That the combination of SOP 250, which does not include gender in a list of what factors should *not* be considered when determining whether an arrest should be made in the context of domestic/dating violence, and the size training would lead to a "de facto" custom and practice. [DE 120 at 278:18–25];

- That a reasonably competent police department would not leave the word "gender" out of their domestic violence policy. [DE 120–2 at 276:6–278:2].

In the Daubert Motion, Hollywood argues that Kirkham's opinions about the physical size factor should be striken, as there is no apparent methodology underlying them. Kirkham testifies that the factor of "physical size" might be held to predominate over any other factors; Kirkham gives in support of this the fact that men more often times are the assailant in domestic violence situations. [DE 120–1 at 161:18–164:9]. Plaintiff argues that while "it is simply common sense that training officers to arrest the bigger individual implicates arresting men, [ ] Kirkham's testimony is still needed to explain to the jury how that can interact with the various police policies/procedures on the scene." [DE 133 at 10]. The Court disagrees. Kirkham's opinions amount to just that, that training officers to arrest the bigger individual implicates arresting men, and is gender biased. His opinions on the topic fail to go beyond the understanding of the average lay person and have no reliable underlying methodology, other than generally Kirkham's own experience as a criminologist and former law enforcement officer. *See* [120–5]. Similarly, Kirkham's testimony about SOP 250's omission of the word "gender" and the combination of size training and SOP 250 leading to a "de facto" custom and practice" are not admissible. In his Report, Kirkham opines that

> the failure of the Hollywood Police Department to promptly take appropriate remedial disciplinary and retraining action in the wake of this outrageous incident serves to nullify its formal SOPS regarding the handling of domestic/dating violence situations, and to substitute in their place an informal custom and practice which tacitly approves such misconduct and paves the way for similar events in the future.

[DE 120–5 at 5–6]. Kirkham's conclusory opinion that Hollywood's failure to take remedial retraining action following Giral-

do's arrest amounts to a de facto informal custom or practice of gender discrimination in arrest is not supported by any reliable, articulable methodology.

### D. Counts I, II, and III: Municipal Liability under Section 1983

In Counts I and II, Plaintiff alleges that Hollywood has a widespread and persistent policy, custom, or practice of engaging in gender discrimination when responding to domestic disturbance calls as is evidenced by their Standard Operating Procedures ("SOP"). [DE 99 ¶¶ 115, 143]. In support of this, Plaintiff alleges that when training officers on the factors to consider in determining who the primary aggressor in a domestic incident is, Hollywood instructs its officers to "consider the physical size of the parties." [*Id.* ¶¶ 116, 145]. Plaintiff also points a list of factors in SOP 250 that should *not* be considered when determining whether an arrest should be made in the context of domestic/dating violence; the list does not include gender or sex. [*Id.* ¶¶ 121–23, 149–51]. In Count III, Plaintiff alleges that Hollywood engages in a pattern and practice of discrimination and profiling when determining who should be arrested when responding to domestic disturbance calls. [DE 99 ¶¶ 163, 165, 168]. In support, Plaintiff points to the training materials and SOP 250 outlined in Counts I and II, as well as statistical evidence. [*Id.* ¶¶ 166, 169–70, 174]. Specifically, in the City of Hollywood, during a three month period, 130 males were arrested as compared to only 38 females; that of the females arrested, only 25 were arrested when the victim was a male; and that less than 15% of domestic violence arrests involved female on male violence. [*Id.* ¶ 166].

■ Respondeat superior liability is unavailable under § 1983 as to a municipal actor; rather, the plaintiff must identify a municipal policy or custom that caused the injury. *Grech v. Clayton Cnty., Ga.,* 335 F.3d 1326, 1329 (11th Cir.2003). This can be accomplished by either identifying: "(1) an officially promulgated [municipal actor's] policy or (2) an unofficial custom or practice of the [municipal actor] shown through the repeated acts of a final policymaker for the county." *Id.* at 1329 (citing *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690–91, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Insofar as a plaintiff takes the latter approach, the plaintiff "must establish a widespread practice that ... is so permanent and well settled as to constitute a custom or usage with the force of law." *Grider v. Cook,* 590 Fed.Appx. 876, 881 (11th Cir.2014) (quoting *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1479 (11th Cir.1991)).

■ Hollywood argues that it is entitled to summary judgment in its favor because Plaintiff has failed to identify any specific instances of discrimination other than his own. *See Grider,* 590 Fed.Appx. at 882 (affirming dismissal of policy or custom claim where plaintiff's allegations "involved only [plaintiff] himself and not a widespread practice or custom"); *see also Barr v. Gee,* 437 Fed.Appx. 865, 875 (11th Cir.2011) ("[E]mployees' actions do not imply municipal liability absent an official policy or custom, and a single incident does not support an inference of such a policy"). Indeed, Plaintiff cites no other specific instance. Plaintiff instead relies on SOP 250, the training module's reference to "physical size," and the training module's repeated suggestions that a domestic violence aggressor would be male (e.g., referencing "male privilege" and male pronoun usage such as "[a] victim may believe *his* threats"). Plaintiff con-

tends that these materials, in combination, support the existence of either an official policy of arresting males in domestic violence contexts, or in the alternative, that they led to an unofficial custom or practice of gender discrimination. The Court disagrees.

It is undisputed that Hollywood's Police Department (the "Department") had a standard operating procedure entitled "Biased Based Profiling," known as SOP 121, in effect at the time of the arrest. [DE 109 ¶ 33]. SOP 121 is an overarching policy applying to all members of the Department. [Id. ¶ 34]. SOP 121 defines bias based profiling as "[t]he selection of an individual(s) based solely on a trait common to a group for enforcement action. This includes but is not limited to ... gender." [Id. ¶ 36]. At the relevant time SOP 121 was (and still is) a mandatory orientation topic for all then-active officers and new officers. [Id. ¶ 37]. SOP 121 states that officers shall not consider gender in establishing probable cause. [Id. ¶ 43]. In its Motion, Hollywood argues that SOP 250 must be read in conjunction with SOP 121 and that when read together, the omission of "gender" from SOP 250 and the inclusion of "physical size" as one of multiple non-exclusive factors considered by Department officers in determining probable cause in domestic violence situations are not sufficient to create a genuine issue of material fact. In response, Plaintiff asserts that the existence of SOP 121 is not dispositive, and suggests that, in fact, the inclusion of gender in other SOPs, but not in the SOP relating to domestic disputes, is probative of discriminatory intent.

The fact that SOP 250 does not include gender in its non-exhaustive list of factors not to be considered does not necessarily mean, as Plaintiff asserts, that the Department actively encouraged its officers to consider it. This is especially so where SOP 121 states that gender shall not be considered when establishing probable cause. In *Buckheit*, the court explained that a facially neutral policy including, among other questions, "was one party physically larger and stronger than the other?" did not give rise to an inference of discriminatory intent even where statistical evidence showed weak disparate impact. *Buckheit v. Dennis*, No. C 09–5000 JCS, 2012 WL 1166077, at *13 (N.D.Cal. Apr. 6, 2012).

Plaintiff proffers arrest statistics procured from Hollywood during discovery; namely, that 78% of domestic violence arrestees are men, and that while only 11% of women who call the police on a man for domestic violence are themselves arrested instead, the number is nearly 40% for men who call the police on women for domestic violence. [DE 123 ¶¶ 60, 63]. With respect to the arrest statistics, Hollywood argues that there is nothing about them that is noteworthy such that it suggests that a policy or custom of gender discrimination was present at the time of Giraldo's arrest. In its Motion, Hollywood, citing statewide statistics, argues that the Department statistics are consistent with statewide trends. Hollywood has conceded in its Reply that its cited statewide "numbers and math calculations are incorrect," but argues that in any event, it is Plaintiff's burden to produce evidence that the Hollywood Department statistics affirmatively show that Hollywood has a policy or custom of improperly arresting men, and that Plaintiff has failed to do so. [DE 130 ¶ 52]. Plaintiff contends that the correct statewide statistics indicate that 73% of arrests for aggravated assaults and simple assaults are of men statewide, and 27%

of these same arrests are of women. [DE 123 ¶ 61]. In any event, Plaintiff argues that the comparison is flawed because the statewide numbers refer to arrests encompassing crimes outside of the domestic violence sphere. Even taken on their own, without making a statewide comparison, the bare statistics are not sufficient to support a jury finding that there is an official policy, or an unofficial policy or custom, of gender discrimination.

In sum, Hollywood has established that there is no genuine issue of material fact as to Counts I, II, and III. Plaintiff, through the training module, SOP 250, and the arrest statistics, has failed to make a sufficient showing to defeat summary judgment on these claims.

### E. Count VI: Failure to Train

■■■■ Count VI alleges that Hollywood failed to train its officers regarding dating and domestic violence, leading to the violations of Giraldo's constitutional rights. [DE 99 ¶ 261, 275]. For a failure to train or supervise claim, a plaintiff must establish that the "municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir.1998). Such a policy of inadequate training may be proven by showing that the failure to train evidenced a "deliberate indifference" to the rights of a municipality's citizens. *Id.* In order to show "deliberate or conscious choice" or such "deliberate indifference," the plaintiff "must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id.* Deliberate indiffer-

ence "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). A plaintiff can establish that a municipality was on notice of a need to train by showing a widespread pattern or "even a single earlier constitutional violation" if the plaintiff also demonstrates "that constitutional violations were likely to recur without training." *Am. Fed'n of Labor & Cong. of Indus. Organizations v. City of Miami, FL,* 637 F.3d 1178, 1189 (11th Cir.2011). In some cases, the need for training is so obvious that deliberate indifference can be established even without an earlier violation or pattern of abuse. *Id.*

■■■■ Hollywood argues that Plaintiff cannot show the requisite notice for deliberate indifference through either avenue. In its response, Plaintiff only briefly responds, by simply reiterating the legal standard, to the assertion that it cannot establish a need to train by showing violations were likely to recur without training. As Plaintiff has only pled, and presented evidence of, his own alleged constitutional violation, Plaintiff must show that violations were likely to recur without training. The Court agrees with Hollywood that Plaintiff has not made a sufficient showing to defeat summary judgment in this regard. Plaintiff next argues that the need to train is so obvious in this case that Plaintiff need not establish a pattern of abuse. In support of this obviousness, Plaintiff again points to the allegedly biased SOP 250 and training module. In *Canton,* the Court speculated in dicta that an example of an "obvious" need to train might be training on the constitutional lim-

its of the use of deadly force for the officers armed with firearms in part to use in arresting fleeing felons. *City of Canton, Ohio v. Harris*, 489 U.S. 378, n. 10, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The record in this case does not amount to evidence of "obviousness" such as that described in *Canton* and Plaintiff has failed to cite any other relevant caselaw in support. The Court finds that Hollywood is entitled to summary judgment on the failure to train claim.

### F. Count V: First Amendment Retaliation Claim

In response to the events on September 30, 2013, Giraldo drafted a complaint with the City of Hollywood, Florida Policy Department's Internal Affairs Unit ("IA"). [DE 109 ¶ 29]. On April 29, 2014, Plaintiff submitted his Complaint Letter to IA and signed an IA intake form. [*Id.* ¶ 30, DE 99–10]. On May 13, 2014, IA sent Giraldo a letter acknowledging receipt of his Complaint Letter. [*Id.*]. Both the intake form and the acknowledgement letter reference Fla. Stat. § 112.633. [DE 99–1, DE 99–10]. The investigation concluded on June 27, 2014, when Hollywood sent notification to Plaintiff (the "IA Closeout Letter"). [DE 109 ¶ 30, DE 109–1].

Plaintiff alleges that Hollywood intentionally altered the statute in the acknowledgement letter to suggest that it is a felony violation for anyone to disclose any information pursuant to the agency's investigation. [*Id.* ¶ 227].[4] Plaintiff has alleged that his speech was chilled because he understood the letter and intake form to mean that he could not talk to anyone about what happened. [DE 99 ¶ 234]. In

2005, the Eleventh Circuit held that Fla. Stat. § 112.533(4) is an "unconstitutional abridgement of core First Amendment Rights." [*Id.* ¶ 229]; *Cooper v. Dillon*, 403 F.3d 1208, 1219 (11th Cir.2005). Even so, the statute remains on the books as it has not been repealed. Fla. Stat. § 112.533(4). It is the undisputed policy of the Department that "[n]o person will be discouraged or in any way prevented from filing such a complaint [for alleged improper detention or search based upon gender identity], or retaliated against because they have filed a complaint." [DE 109 ¶ 54]. It is also undisputed that the Department never took any steps to charge or prosecute Plaintiff pursuant to Fla. Stat. § 112.533.

■ To establish a First Amendment retaliation claim plaintiff must establish (1) that his speech or act was constitutionally protected, (2) that the defendant's retaliatory conduct adversely affected the protected speech, and (3) that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir.2005). "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 1254.

■ Hollywood argues that Plaintiff's allegations do not satisfy the second element because they do not constitute any adverse action. Hollywood argues that because the acknowledgement letter and intake document are both form letters routinely used to process all IA complaints, there is no "tit-for-tat" adverse action.

---

4. The statute states that violation constitutes only a "misdemeanor of the first degree." Fla. Stat. § 112.533(4).

Similarly, Hollywood avers that Plaintiff has suffered no injury and his own speech was not actually chilled. "[E]ven in a first amendment context the injury-to-the-plaintiff requirement cannot be ignored." *Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 760 (11th Cir.1991). To prevail on a ·retaliation claim, Plaintiff must show more than a "de minimis inconvenience" to the exercise of his First Amendment rights. *Bethel v. Town of Loxley*, 221 Fed.Appx. 812, 813 (11th Cir.2006). The Eleventh Circuit in *Bethel* noted that while "it is not dispositive, the plaintiff's actual response to the defendant's conduct provides some evidence of the tendency of that conduct to chill First Amendment activity." *Bethel*, 221 Fed.Appx. at 813 (quoting *Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 500 (4th Cir. 2005)).

■ Hollywood points to Giraldo's deposition testimony that he·was not scared to speak to the media because of the IA acknowledgment letter and that he did, in fact, speak to the media. [DE 104–4 294:11–295:11]. In response, Plaintiff offers an affidavit from Giraldo stating that he "spoke with the media only after [he] was informed that the statute ·cited in the letter sent by the Internal Affairs Unit was unconstitutional" and "[h]ad [he] known that the letter sent by the Internal Affair Unit threatening prosecution was unconstitutional, [he] would have spoken to the press sooner." [DE 121–1 ¶¶ 5–6]. "When a party has given clear answers to unambiguous questions which negate 'the existence of any genuine issue of material fact [for summary judgment], that party cannot thereafter create such an issue with an affidavit that merely contradicts, *without explanation*, previously given clear

testimony." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 (11th Cir.2003)(quoting *Van T. Junkins and Assoc., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir.1984)). In its Reply, Hollywood contends that the· affidavit is directly contrary to his sworn deposition testimony, and that it should be disregarded ·on that basis. The Court agrees, and has disregarded the affidavit.

Overall, the Court finds that even when construing the record evidence in the light most favorable to Plaintiff, a reasonable jury could not find that the inclusion of the language in the forms, routinely provided to those filing complaints with IA, would likely deter an ordinary person from the exercise of First Amendment rights. Persuasively, the evidence indicates that Giraldo experienced no more than a de·minimis inconvenience to the exercise of his First Amendment rights; if anything.

## IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants, Michael Malone, Raul Toledo and Brittany Schendel's Motion for Summary Judgment [DE 106] is hereby **GRANTED;**

2. City of Hollywood's Motion to Exclude Opinions Rendered by Expert Witness George Kirkham on Behalf of Plaintiff Christian Giraldo [DE 126] is hereby **GRANTED in part** and **DENIED in part as moot;**

3. City of Hollywood's Motion for Summary Judgment [DE 110] is hereby **GRANTED;**

4. The Court will issue a separate judgment pursuant to Fed. R. Civ. P 58(a).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 19th day of October 2015.